The third case on our call of the docket today is case number 108893, General Motors Corporation et al. v. Maria Pappas. This is agenda number 8. Counsel, are you ready to proceed? Thank you. Good morning. May it please the Court. Assistant States Attorney Tasha Gibbons on behalf of the Cook County Collector. Your Honors, we're here on a somewhat narrow and clear issue, and yet it has complexity to it. We are here to discuss the propriety of the Circuit Court and Appellate Court's award of judgment interest under the Civil Practice Act in addition to the statutory interest that's available under the Property Tax Code Section 2320. The Section 2320 is clear. Its terms provide for interest to be paid when a tax refund is ordered by the Circuit Court or the Illinois Property Tax Appeal Board for the interest to accrue on the taxes that are refunded from the time the taxes were paid or due until such time as the taxes are refunded. The language is clear. This time period covers both the time prior to judgment and the time subsequent to judgment when the refund is actually paid. Illinois has a long history of cases indicating that in the absence of a statute in the Property Tax Code authorizing the payment of interest on tax refunds, interest is not available. Here the legislature has spoken. They have provided in Section 2320 that interest is payable pursuant to relief provided under 2315 of the code. Counsel, before you get to your substantive argument, may I ask you some procedural questions? Sure. My understanding is that this occurred when the treasurer moved for a stay pursuant to 305, Supreme Court Rule 305. The court allowed the motion to stay, and sua sponte, I believe, also indicated that judgment interest would be applied to that period. So my question is really two parts. First is, in the trial court, my understanding is the treasurer made no objection to that order that the court entered and first raised it on appeal. So why isn't it forfeited? And then secondly, that section of the court's order about the application of post-judgment interest, is that a final order? And if it is, how do we have jurisdiction or how does the appellate court have jurisdiction when there was no notice of appeal or amended notice of appeal as to that order? For the first question, the court awarded the judgment interest in regard to the request for stay. The collector did not want the judgment interest awarded. However, there's no record of the proceedings where that happened in the evaluation objections. But from the get-go, the collector intended to appeal that because it was additional relief that was provided and is not authorized under the property tax code. It did not at any point bring that to the court's attention in the trial court, correct? It first raised this issue in the appellate court. I believe it was addressed, but to the extent argued, there was no motion for reconsideration. We'll state that. The court awarded the judgment interest, and then the appeal had been filed in three of the cases. However, with regard to the tax rate objections, this matter was argued prior to the judgment in those cases. In those cases, the taxpayer actually brought a motion seeking a determination of the appropriate amount of interest, and the judge did award the, did indicate that the judgment interest would apply in those cases pending the stay over the disputed interest. This was over the collector's objection. What objection? What objection? In which case was there an objection? Again, the proceedings where that happened are not, there's not a proceeding to reflect back, but there was an objection in the rate objections. That's not what was sought by the treasurer. And in the valuation objections, the issue was brought first with the motion for stay. However, in her ---- by the court, the collector didn't raise any argument before the trial court that the court was, had no authority to do that or it was inappropriate to use that standard of judgment interest, correct? At that time, the court had decided. Respectfully, the court had decided. There was no further opportunity for argument absent a motion to reconsider. And under Supreme Court rules, it's not necessary that we bring a motion to reconsider. That's why there was no further objection. The court issued its order. Is it a final order in the sense of final and appealable? I believe so, Your Honor. The case was already pending on appeal. And in the rate objections, again, that issue had been presented and it was part of the notice of appeal. And there was not a second notice of appeal. The judgment interest was part of the notice of appeal? In the rate objection cases. There were 40-some tax rate objection cases. This statutory, not statutory, but the judgment interest was part of the notice of appeal? I thought it was not. I thought it was never, there was not a notice of appeal that was filed after the court entered its order, nor was the notice of appeal that had been filed amended to reflect any objection to the trial court's order. There were multiple cases that were consolidated on appeal. Okay. There were approximately 40, 43, perhaps, tax rate objection cases, which were combined with the traditional tax valuation objections. There were three of the valuation objections to which you refer where there was not a second notice of appeal filed. Because the original case was on appeal, all that was sought was a stay, then there was no second notice of appeal filed. However, in the docketing statement, as early as the docketing statement in the case that was already on appeal, with those three, limited to three valuation objections, the issue was presented. So with the docketing statement is what confers jurisdiction on the appellate court? I'm not saying that confers jurisdiction, but under the Ebert case, if something's a matter of form over substance, it doesn't preclude the court from exercising jurisdiction. And, in fact, the court had the 40 to 43 cases in the rate objections, the issue appropriate, the cases were consolidated. And, as Justice Murphy indicated in the GM decision, that, in fact, it was appropriate for the court to hear that issue in the three valuation objections as well. Let's talk about the GM case. In the GM case and those other objections, there was no motion to stay in any of those cases, correct? Only in the General Motors case. Only in the General Motors case there was no motion to stay presented. So in the General Motors case there was no motion to stay. Correct. And so the kind of order that I've been asking questions about, where the court sua sponte indicated that there would be this kind of judgment interest that was added to the court's order in terms of the granting of the estate, that was not part of the General Motors case. Correct. Correct. Okay. So when the appellate court says that General Motors has waived the right to argue this, that the court, that they have, in fact, a right to that kind of interest, where was the appellate court coming from in that sense? How could the General Motors have waived that argument when it had never been raised before the trial court? Well, Justice Tice, as we indicated in our brief, in fact, there was not a motion for stay filed in that case. So while it was not raised on the other side by the taxpayer, it was a different situation where that issue was actually not presented to the trial court. So, you know, whether or not that was the correct finding by the appellate court, I think more to the point from the collector's perspective is that the award of Civil Practice Act judgment interest, in addition to statutory interest under the property tax code, has not occurred in previous cases that have been cited by any of the learned counsel for the taxpayer. In fact, in cases where the property tax code addresses an issue such as interest, then the Civil Practice Act does not apply. Moreover, interest on tax refunds, such as property tax refunds, are in derogation of the common law. It's only provided where specifically addressed by the statute. Here is Section 2320. In the Madison 2 case that this court previously decided, there was an effort by various taxing districts to participate in property tax litigation under 2315 of the property tax code. There, the statute provides for the plaintiff, for perhaps joinder of plaintiffs, and names the collector as the defendant. However, the statute did not address whether taxing districts could, in fact, intervene. In that case, this court found that where the property tax code was silent on that particular issue, the Civil Practice Act applied. Here, we do not have that case. We have the property tax code providing for the terms and the extent of interest that is payable on property tax refunds in Section 2320. That interest accrues on the tax refund from the date the taxes were paid until the tax refund issues. Illinois law also does not favor or permit compound interest under the O'Connell and Lewis cases, where the person entitled to the judgment was seeking the continued accrual of interest, where interest would accrue on top of interest that had already accrued. The courts found that that was, in fact, inappropriate, that Illinois law did not favor or allow, did not permit compound interest to be paid. Similarly, here what's at issue is a disputed amount of interest. The statute at issue 2320 was amended effective January 1 of 2006. All of the cases before this court received judgment orders that were entered subsequent to the effective date of the amendments. Thus, when the orders were submitted to the Cook County collector for payment, the collector paid those orders, the property tax refunds, with interest in accordance with the law in effect at the time. This was done in appropriate interpretation of the law under the Noe case, the Rose v. Noe case. There was a prospective application of the law. There has been some argument made by the taxpayers for General Motors that, in fact, they are seeking the payment of the old statutory interest at 5% for the duration of the time. What both the circuit court and the appellate court did was indicate that prior to the effective date of the amended act, that the old interest percentage at 5% would apply from the date the taxes were paid. And thereafter, going forward from January 1 of 2006, the rate based on the lesser of the 5% or CPI would apply. In the Noe case, there you had a situation where the statute changed subsequent to a judgment, where some of the judgment remained unpaid, and there even where the statute changed after the court had made its decision, then going forward, the only interest that was allowed to be paid was based on the law in effect at the time. So from the date it was amended going forward, then only that amended rate could apply. So to hear the difference between GM and the other taxpayers, as we indicated, in some of these cases, there was a motion to stay. In other words, the treasurer did not have to pay out until the appeals were resolved. There was no motion to stay as to GM, correct? Correct. However, we are told the collector did not pay the judgment as to GM until many years later. If I may, the collector paid the property tax refund with interest based on the CPI pursuant to interpretation. And then subsequently, the additional interest, the difference between the 5% and CPI was paid subsequently. How many years afterwards? It was paid in January of 2010. Two years later. So there was a stay as to some, not a stay as to GM, and yet they were not made whole until sometime in 2010. So how, there's a dispute here as to how that interest should be paid. Should it, you know, when does the time end for interest to be calculated? When the judgment's entered? When it's finally paid? When the entirety of it is finally paid? What is your position on that? We believe that the terms of Section 2320 govern this issue. Clearly, the code provides that the interest is to accrue from the date those taxes were paid or due, whichever is later, up until those taxes are refunded. So the taxes were refunded to General Motors several years ago. And what we now consider under the appellate decision, a portion of the interest was paid at the time. It was in a very good faith construction of the law that the interest was appropriately paid. So you had both the principal property taxes were refunded and the interest based on the CPI and the admitted statute. Under the terms of the statute, the interest accrues on the property tax refund. There's no provision for the accrual of interest on additional interest that remains disputed and outstanding. So this would allow accrual of additional interest that is not authorized in the property tax code. Again, we have to go back to the Illinois Constitution in 1970, which provides all authority with regard to revenue and tax matters in the Illinois General Assembly. The General Assembly acted and enacted 2320 in its current version with an effort to reflect a little bit more of the economic times and interest rates that are more typical of these days that amended the provision to indicate that the interest would be based on the lesser of the 5% or CPI. So for a court to award additional interest based on the Civil Practice Act or to allow the continued accrual of interest only on interest that remains outstanding, both lies outside the parameters of the specific terms of the property tax code. It also is not in line with the strict construction of interest statutes that is supported by a number of cases in this area, such as Clarendon Associates, the Lakefront Realty case, the Jones v. Department of Revenue, where prior to any interest, none were paid on property tax refunds under the Civil Practice Act or otherwise. Thus, we think the legislature, the law indicates the legislature chose the extent of interest payable. So in this case, what would make the taxpayers whole is paying that amount that's specified in 2320 up until the date the taxes were refunded. When those taxes are refunded, a summary sheet is provided by the Cook County Collector, which indicates the amount of taxes by parcel number for each piece of property, each objection, and it indicates the interest that is paid. Such information details, in fact, what's being paid at that time. Thus, it clearly indicated in this case, in General Motors as well as the SBC, Newcastle, and the rate objections, what was paid in principal property tax refund and the interest that accrued on that refund. Once that refund was paid, the property tax code does not allow additional accrual of interest. We also want to address the Sears case, which was decided by the Illinois Appellate Court. You know, one of the reasons that this issue is now before this court, there was a conflict between the Sears decision and the GM with regard to the application of the judgment interest. There we were talking about a refund on certificate of errors under the property tax code and Section 2178 provides for the extent of interest payable. There was a dispute about the time period which interest ran. There was mention of 60 days subsequent to the issuance of the certificate of error in Sears. And the dispute centered around whether the issuance occurred when the assessor initially recommended the certificate or when a court finally adjudicated a right to a certificate of error. There was a decision on that matter. The court specified the time period and then the collector sought a stay in that matter. When the stay was issued, the circuit court also permitted the application of judgment interest under the Civil Practice Act. And that was appealed. On appeal, the First District indicated that, in fact, the court initially lacked jurisdiction to award additional interest under the Civil Practice Act. Secondly, it did go on to address the propriety of civil judgment interest in property tax refunds. Could you address the jurisdiction again? Sears says it's a very similar pattern that we have here. There's going to be a refund, a motion to stay. That's granted, notice of appeal filed, and then later the court adds this addendum that's basically the same idea here, that pending appeal, that there will be the judgment interest. And this court said the trial court did not have jurisdiction to add that additional condition after the notice of appeal had been filed. Can you address that? Yes, that's, in fact, what the court ordered. They indicated that once the notice of appeal was filed, then there was no authority for the court to grant additional relief, whereas the stay was more of an incidental matter, and the court had a right to do that under the Supreme Court rules. Do you agree with that or do you not? Do you think in our case the trial court had jurisdiction to make this additional order after the motion to stay was granted? I think they only had the authority to grant the stay. I don't believe they did have the authority to grant the additional interest, because it's additional relief that's not been provided before in property tax cases. It is additional revenue. When you talk about 6% interest accruing in addition to, say, in the General Motors case, I mean, the difference between the CPI and the 5% for a set time period was almost $200,000. So are you agreeing with Sears that our trial court did not have jurisdiction to enter that order? We are. Additionally, we would indicate that the issues that were reached beyond the jurisdiction were appropriate and rightly addressed by the appellate court with regard to the authority of the court to, in property tax matters, grant the additional interest. Your time has expired. Do you have a final comment you'd wish to make? We will address further on rebuttal and ask for a reversal of the judgment interest application, Justice. Thank you. May it please the Court, my name is Chris Kaczynski, and I represent the taxpayers, SBC and Newcastle Properties, LLC in this matter. And for clarification's sake also, I'm seated also at the council table here with Mr. James Rooney, who represents the tax rate objectors in the Yato case, where a stay was entered also, and judgment interest application. Judgment interest was ordered by the court, and Mr. Mark Davis. Mr. Mark Davis is the attorney for GM in this matter, and he is the attorney who has the case where there was no stay and there was no award of judgment interest at the trial court level. We have divided our argument, where I will be discussing the issues concerning where a stay was entered by the court and where judgment interest was entered by the trial court, and Mr. Davis will be dealing with the issues specific to his case. If you don't mind, you need to keep track of your own time. I will, Your Honor. To address your questions, Justice Cease, in regards to the matters where I represented SBC and Newcastle before the trial court, what happened at the trial court level was the collector filed her motion for stay, and as you correctly pointed out, during the course of the argument concerning the judgment interest, there was no stay. We had addressed the court and asked them for judgment interest for a fear that at the end of this whole process, if a stay was entered, we would not be given any type of compensation for the delay in the payment of the money that we were owed. And when we addressed that issue with the court, the court decided to include, while granting the stay in the court's discretion, granting the stay, to include a condition to that stay. And that condition was this imposition of judgment interest. And that is really the procedural history of what occurred in that matter. Was there an objection by the collector to that? No, Your Honor. There was no objection. There was no discussion at all before the trial court having to do with if the trial court had authority to grant judgment interest or not. That issue was never raised at the trial court level. There was no motion to reconsider. And in fact, the order that was entered by the court in regards to this was drafted by the collector's office, not by tax objecting counsel. So there was no objection. And then when the notice of, excuse me, in the notice of appeal that was filed, there was no mention at all of judgment interest or any objection to judgment interest at that time also. And as counsel correctly pointed out, the first time that we hear of anything is in the document statement in regards to judgment interest. And I raised this issue as part of my case of the appellate court, that there is an issue of waiver. There's an issue of jurisdiction of the appellate court to rule on the matter because it was never brought up in the notice of appeal. And I think in regards to that, I re-raised those issues here before this court, I think those issues have been brought up in the notice of appeal. And I think those issues are appropriate in this matter. Because if we agree with the treasurer, however, that the code controls, is that something that can be waived? I think if the code controls that you probably can't waive what is in the code. If the code is something, if you find that the code decided this is how, this is the interest that you're entitled to and you're entitled to nothing else because this has been specifically declared by the legislature, then I think that my argument for judgment interest would fail. But I would address those issues because I don't think that at the end of the day when you look at the legislative intent. I know you disputed, I just, in addressing your waiver, I just wondered if we go that way, waiver kind of is pushed to the side. Yes, Your Honor. In regards to the argument then, in regards to jurisdiction, did the trial court have jurisdiction to enter the stay? I think you'd also discuss that. Did the trial court have jurisdiction to enter the stay and did the trial court have jurisdiction to issue judgment interest? Just jurisdiction, not the authority, but just the jurisdiction to do so. I think that the answer to that and the flaw in the reasoning in the Sears case is that if you look at the procedure involved here, the motion for stay was brought pursuant to Illinois Supreme Court Rule 305, which gives the trial court specifically jurisdiction to enter a stay. That rule also gives the trial court discretion to either enter the stay or not enter the stay and then also to condition that stay on any grounds to make the stay just. So clearly it is Illinois Supreme Court Rule 305, which gives jurisdiction to the court in this matter. And you can also look at the time period between the notice of filing of the appeal and the notice of filing of the stay and the actual order entered by the trial court. In my matters, that was all done within 30 days of filing the notice of appeal. So I don't think there's any issue in regards to jurisdiction in my case. The Sears case, I think that final order was entered granting the motion to stay and the judgment just far after 30 days after the notice of appeal also, just as a side note to why the Sears decision may be a little bit different. Another important factor in regards to this issue of waiver or jurisdiction of the appellate court that I should mention is the First District's opinion kind of indicates that, yeah, I think that the, it kind of looks like the court is saying they didn't really do it the right way, but kind of no harm, no foul. And we're going to go ahead and we're going to let them argue even though they probably should have given you notice earlier. The problem with that is there is a potential for prejudice against my client. And here's why. Because if the trial court was informed at the time that we had this discussion, this argument before the trial court in granting the stay, it was in the discretion of the trial court to deny the stay in the first place. And if the trial court was, thought there may be some issue and if he didn't have authority to grant that, he may have said, I'm not going to issue your stay, I'm not going to issue judgment of interest, pay them out and appeal, which is clearly an option he had. Now what happens by not raising this issue earlier, as I cite, it's kind of the same situation in the Pekin insurance case that I cite to you in my brief, where the treasurer can kind of sit back, get the benefit of the stay, and then wait to appeal, and then if you decide after reviewing this case that judgment of interest doesn't apply, then my client has not been refunded for taxes that they paid in 2004 and no additional amount of interest is applied to them to compensate them for that time. So my client would be prejudiced. I think that's one thing I think the trial, excuse me, the first district appellate court didn't really address when they were considering if there was any prejudice towards my client. Would that be any greater prejudice than if at the time of the granting of the stay there weren't additional conditions put on the stay? The trial court had just determined, I mean, you'd be in the same position, wouldn't you, as if the trial court had just issued no additional conditions? Yes. With respect to the stay? I would be, but I think the law... I mean, it's the same argument you probably made to the trial court of how you would be prejudiced if they didn't add the additional conditions, right? Right, but I think it's in the discretion of the trial court to make that decision for the stay in the first place. And what happened, the difference would be then if the court determined at that time that they didn't feel that I should get judgment of interest and I wasn't entitled to it, at least they would have had the full opportunity to make an educated decision and not have this brought up later without any kind of opportunity for them to address that issue. That's the difference I see in that. If I can just turn to the issue then of is the property tax code silent on this matter? I think what you need to do is you need to take a look at Section 2320. In Section 2320, not only orders interest and payment of interest to taxpayers in this situation when there's a court order saying that we're entitled to it, what it also says is it includes mandatory language. And that mandatory language says if the final order of the Property Tax Appeal Board or a court results in a refund to the taxpayer, refunds shall be made by the collector from funds remaining in the protest fund. It's not discretionary. The collector shall make that payment to us. It goes on to say interest from the date of payment, regardless of whether the payment was made before the effective date of the mandatory act or from the date of payment is due, whichever is later, to the date of refund shall also be paid. Again, mandatory language, shall. The legislature clearly intended that the collector refund the overpaid taxes with interest immediately to the property owner. And that's what happens in 99.9% of the cases that appear in the courts at specific objections. And that's why there's no case on point in regards to this issue because you never have an issue where the treasurer says, here's your money, I'm not going to pay you anymore at this time. And that's what happened here. What happened here is the treasurer, the collector, by her actions of not paying the required amount to start with, deviated from Section 2320 of the Property Tax Code. And that begins your avenue to get outside the realm of 2320. 2320 is silent as to the issue of what happens when the treasurer refuses to follow the mandate of the legislature that they shall pay. Section 2320 is silent as to the issue of what happens when a court then enters an order saying, treasurer, you didn't pay the right amount in this matter, you need to pay an additional amount. And then the treasurer, instead of paying, says, I'm going to appeal this, let's stay payment of this. Again, there's nothing in the tax code, in this section of the tax code, for specific objections which allows the treasurer to do that. What the tax code does allow, it allows appeals. In Section 2315, the specific objection procedure and hearing section allows appeals of these matters. So in regards to that, we get into this realm of appeals and the rules of the Supreme Court concerning appeals and the rules of civil practice concerning appeals. And now we're outside of the code, which is similar to your decision in the Madison Associates 2 case, which the collector doesn't really discuss from the fact that I think the Madison 2 case actually supports the action of the appellate court in this matter. Because in Madison 2, if you did that same type of analysis to say, does the property tax code specifically deal with this issue in regards to where a stay is entered and the collector refuses to make payment, even though they're directed by legislation to do that? No, it doesn't. The property tax code doesn't do that. So that issue then can be addressed through other avenues of the law, in this case, Supreme Court Rule 305, and also the rules of the civil procedure. And that's where the court gets jurisdiction or the court is in compliance with the property tax code and with the normal rules and the laws of this state. And that's why, in this instance, judgment interest should be applied. I'll leave it to Mr. Davis to address the other issues. Thank you. Thank you. May it please the court, counsel. My name is Mark Davis. I represent General Motors in this case. Justice Theis, you were correct that no question of judgment interest was raised. General Motors argued its case entirely under Section 2320 of the property tax code. We have no idea where the question or where the appellate court was coming from in saying that an issue was waived which was never presented to it in the first place. It's our position that interest under Section 2320 has to continue until the taxpayer is made whole. The taxpayer is not made whole. General Motors, as I stand here today, has not been paid the full principal tax refund. There is simply no authority in Illinois law or any law that we can find that any party has found that the treasurer can unilaterally stop the running of interest by paying less than the full amount of refund and interest owed under the trial court's judgment and under the property tax code. There is no law that defines a Section 2320 refund, quote, with interest to the date of refund as less than what that phrase plainly says. Neither the appellate court nor the treasurer can cite any authority to this court that says that they can pay less than the amount that was owed as of July of 2006, which was when the short payment was made to General Motors and thereby stopped the running of interest at that point. Now, another payment was made under the appellate court's decision in January of this year, as counsel acknowledged, but that payment addressed only interest that had accrued before January 1, 2006. There has never been a dime paid with respect to interest that accrued from the period of July 2006 through and including the present day. At the rate which we maintain due process requires to be applied in this case, namely the 5% preamendment rate, General Motors is still owed about $53,000. At the lower CPI rate, General Motors is still owed about $19,000. Mr. Davis? Yes, ma'am. In Commonwealth Edison, we stated that the rate of taxation may be retroactively changed. It will, at least for periods of less than 12 months. Does that foreclosure argument that the due process requires continuous 5% interest? It doesn't foreclose it in the slightest, Justice Burke, because this is not a question involving a rate of tax. It's not even a question involving a tax that's lawfully collectible. The circuit court, by its judgment, has determined that the money is to be returned to the taxpayer. This is money that was either illegally or erroneously exacted from the taxpayer, and it's coming back. So there's no question of a tax rate at all. And the Commonwealth Edison decision, the Darusmont U.S. Supreme Court decision that has been cited, are to the same effect, although we've pointed out in the briefs that on due process grounds, stopping the taxpayer from receiving the preamendment rate of interest would not even pass muster under the standards that are enunciated in those cases for lawful tax rates. But that's not what's involved here. Returning briefly to the question of why interest is still running, this court has held since 1858, and the appellate court has held continuously, that there is a general, solid principle that governs the allocation of principle and interest when a partial payment is made. It doesn't matter whether it's a judgment debtor, a contract debtor, any kind of debtor. There is no legal context in which the question has been presented to the Illinois reviewing courts in which this court and the appellate court have not held that a partial payment is applied first to interest, and only if the interest is entirely extinguished, then it is applied to reduce the principle. Consequently, if enough is paid, as was the case in GM's matter, that the interest is extinguished, the remaining balance is principle tax. The figures that I mentioned, which GM is still owed, is unpaid principle tax under the rule that has universally been applied by this court for 150 years of Illinois law in every legal context. Now, the only thing the treasurer has offered against that is, well, all of that string of cases are not property tax cases. We've pointed out in return that one of them, the throw-all car case in the appellate court, was a case involving unemployment contributions, which the court characterized as a tax. It's also been applied in workers' compensation judgments. It has been applied in literally every scenario that has come before the courts, and the courts have declared it to be a general principle of law. In the 19th century, it was known as the United States rule, quote, unquote, emanating from the U.S. Supreme Court. It is a fair rule. There's no reason for it not to be applied here. It allows a precise calculation, and as the courts have explained repeatedly, it does not involve calculating interest on interest. I see my time is short. I'd like to briefly speak to the due process question. We return to the Commonwealth Edison decision of this court, which mentioned that although it had adopted the Landgraf test for statutory retroactivity, due process concerns were still controlled by the same concerns enunciated in the old vested rights cases. And the court commented in cases like Henrick versus Libertyville Schools that a vested cause of action cannot be cut off by a subsequent act of the legislature. Interest under the property tax code is part of the compensation to the taxpayer. The U.S. Supreme Court said in Landgraf itself that the states have almost universally held that compensatory rights are substantive. They may not be cut off retroactively by subsequent legislation. That's consistent with this court's Commonwealth Edison, its Kaveny decision, and all the decisions that the court has made where this question has come up. It's also consistent with the appellate court's decision on property tax interest payments. That's the Apostolakis and Novak case. The treasurer has offered no authority to the contrary, and there is none, to the fact that in Novak the court awarded interest to the taxpayer under a statute that had already been superseded and repealed. The only authority that the Novak court, and we believe all parties have suggested to this court that the Novak decision is correct. We also suggest that it is indeed correct, but we would ask the court to look at the essence of what the court held. The essence of what the court held without using language such as vested rights or even due process is that the taxpayer's rights to interest attached when the tax was paid under protest. The proper prospective application of the amendment in 2006 to Section 2320 is to confine its application to taxpayers who pay under protest after that effective date. With that, I thank the court for its indulgence. We would ask that the appellate court decision be reversed insofar as it cut off interest under Section 2320 and insofar as it did not reach the question that due process compels the application of the preamendment rate. Thank you. Thank you. Your Honors. Counsel, if we get past all of the waiver and jurisdiction questions, are the issues as simple as this? And if not, please enlighten me. What's the rate of interest that should have been paid for the refunds that were due prior to the effective date of 2320, that is January 1, 2006? And secondly, is the issue if it was underpaid when the refund was made, is there a right to claim judgment interest under the civil procedure based upon the fact there was a judgment and you underpaid? That's definitely most of the issues. And then there's the additional issue presented by General Motors regarding whether interest, in fact, continued to accrue when they indicate that a portion of their principal taxes were not paid. As far as the first issue, the appellate court decided that it was appropriate to apply the 5 percent under the old statute through December 31st of 2005. We did not raise that issue in this appeal. What we raised was the application of the Civil Practice Act judgment interest in addition to the property tax code interest. We also did seek, as the appellate court noted, the application of the interest in the amended statute from its effective date through the date of payment of the tax refund. Thus, that would be at the CPI rate. And, in fact, the valuation objectors here, represented by Smith, and General Motors, in fact, have been paid the additional difference. Initially, the interest had been paid out based on the CPI rate pursuant to the new statute. So the difference between the 5 percent and the CPI prior to December 31st of 2005, that has subsequently been paid to all but the rate objectors. The rate objectors present a unique situation because there are literally hundreds of thousands of parcels involved. A refund would involve, then, if this court were to decide in our favor, as we seek not to apply judgment interest in addition to statutory interest, then it would be an almost impossible task for the collector to go to 100,000, approximately, taxpayers to collect back judgment interest. And that's the reason that the additional interest was not refunded to those taxpayers to date. However, in the valuation objections, they have been. And if I may address the Anderson and Novak cases where General Motors. Before you get there, with regard to Mr. Davis's argument that if you pay not at the code interest, it would be the CPI rate would be 19,000. So you're saying you wouldn't know that either? No, that's based on the notion that all of the principal was not paid. He's disputing that, in fact, the principal was paid with what was, you know, believed to be the appropriate rate of interest at the time and then the additional interest that was paid. His notion is that principal remains outstanding, and thus it's still accruing interest based on either the 5% or the CPI. You know, the cases cited by GM, General Motors, really deal with very different types of debtor-creditor relationships. In this situation, the county collector represents some 1,500 taxing districts. She does not stand to gain in any way. She does not benefit by paying a lesser amount of interest. This was done in her capacity as a fiduciary for local taxing districts. Indeed, revenues are the lifeblood of local government for local schools, the public education system, park districts, villages, in fact, Cook County benefits from those property taxes. So when we're talking about taxes being refunded and a specific statute 2320 authorizing the payment of interest, then it was her good faith construction of that amended statute, which was in effect when the payments were made that led to the payment based on the CPI. For whatever duration that the difference between the CPI and 5% was not paid, again, that money is paid out of current collections for the various taxing districts. This system is set up by the legislature pursuant to their authority to do that. The collector does not in any way benefit from the money that was delayed in payment. As far as the taxpayers being made whole, the interest provided in 2320 was intended to do that. All of the taxpayers will receive their interest, and right now that stands as some combination of the 5% and the CPI interest, but they are not entitled to judgment interest under the Civil Practice Act. And the cases cited by General Motors, again, are distinguishable that seek the continued accrual of interest based on their alleged non-payment of a portion. Additionally, we would address the NOVAC and Anderson cases and the constitutional issues raised. In the Anderson and NOVAC cases, those cases were decided based on the precise statute in effect. Then the interest that was paid to property tax objectors was in fact interest that accrued on protested payments. The taxes that were paid that were protested were held in a fund. They actually accrued interest. Thus, those statutes and the cases decided there reflected the actual terms of the statute. The terms are much different today. The protest fund has been abolished. 2320 speaks in terms of refunds being paid with interest that accrues. However, that interest is not accrued on the actual funds held in a protest fund. Thus, those cases are distinguishable when you're talking about the time period to which the law applies. And again, under McKinley v. Madigan, under the Rosemary case, and under, you know, the Illinois law, the law in effect at the time that the case is decided should govern. And if anything, this is a prospective application of the CPI interest rate subsequent to the January 1, 2006 effective date. Any interest accruing thereafter could only be at the CPI, the lesser of the 5% of the CPI. Finally, I would just address points raised with regard to the collector not acting properly and paying interest as she chose. That does not take, the collector acted properly. She, in fact, paid a principal tax refund with interest based on the amended statute. And contrary to the allegations of SBC and Newcastle, that does not take property tax refunds or the interest that is allowed on those refunds outside of the property tax code. The law is clear. The legislature has spoken and the property tax, Section 2320, governs that matter. When the circuit court awarded judgment interest in addition to statutory interest, it either acted without jurisdiction or without authority under the clear law of Illinois. Finally, there is no vested right to a certain rate of interest. Rather, if one were denied the right to obtain a property tax refund or obtain any interest on there, that would be a different story. The legislature has the authority to change the rate of interest at any time. When that rate is applied prospectively going forward to judgments that are entered subsequent to the change in the law, that is an appropriate application of current law and it's an appropriate exercise of the authority of the Illinois General Assembly. And for all the reasons stated today, as well as in our briefs, the Cook County Collector would ask that the court reverse that portion of the appellate court's decision which allowed judgment interest under the Civil Practice Act, interest that was outside the terms of the strict confines of the property tax code. And we'd also ask that the relief sought for the payment of 5 percent interest to date and that the judgment had not been paid of the principal tax refund, that that relief be denied. Thank you.